So, Counsel, the case of C.F. v. Corbett, et al., ready for argument. Good morning, Your Honors. Good morning. My name is Jennifer Monk. I represent Chad Farnan. I'd like to reserve four minutes for rebuttal. Both this Court and the United States Supreme Court have stressed the constitutional mandate of neutrality when considering the government actions under the glare of the Establishment Clause. This case does not concern curriculum or academic freedom. Instead, it narrowly seeks to require Dr. Corbett to recognize the neutrality mandated by the Establishment Clause within a public high school classroom. There are three primary questions before this Court today. Whether qualified immunity can be asserted as an affirmative defense when it was never pled and prejudice resulted, whether Dr. Corbett did express disapproval of religion from the viewpoint of an informed, reasonable observer, and whether Dr. Corbett is entitled to qualified immunity. As to the first question. Actually, I'm sorry to interrupt you so quickly. And I apologize for sounding like a trial judge. But the way you just stated that is the way I think the questions would be presented to me as an appellate judge if there had been a trial. I thought the questions from your perspective, particularly, and most of them ought to be phrased, is there sufficient evidence for a reasonable jury to find for you and therefore entitle the plaintiff to a jury trial? Am I incorrect in articulating the issue that way? Well, we filed a motion for summary judgment and so did the other side, and we were granted the motion. But it's very possible that neither side is entitled to having a motion for summary judgment and granted it unless you submit the case on stipulated facts. Because on each motion, the evidence has to be viewed in the light most favorable to the non-moving party. Absolutely. Here, the defense did not challenge the statements, for the most part, as they were given in the transcript. So the facts really, for the most part, aren't an issue. There are outlying facts that were at issue at the trial court level that really don't bear on the ultimate question of whether Dr. Corbis expressed disapproval of religion. The transcripts themselves were deemed admissible. They were considered by the lower court, and they haven't been challenged in the appellate level as far as the admissibility of the transcripts themselves. It would have to be admissible because summary judgment has to be decided based on admissible evidence. But why don't you go ahead. Dr. Corbis should not be permitted to assert qualified immunity as an affirmative defense. An important note was sounded by the Tenth Circuit when it noted that the defense of qualified immunity is not a parachute to be employed only when the plane has run out of fuel. That's exactly what Dr. Corbis chose to do here. He never pled qualified immunity as the answer. What's the standard of review here on that issue? That would be abuse of discretion. I think that's your strongest argument here. You want to use your time on that? We certainly feel very strong that it was waived, Your Honor, yes. Because this court has stated in Morrison v. Mahoney and the United States Supreme Court stated in Mitchell v. Forsyth that this is an affirmative defense and needs to be pled at the outset. And that I'm aware of there is no case that allowed an affirmative defense that was never pled in the answer to be asserted post-summary judgment after a ruling on the merits of the case finding that Dr. Corbis violated the Establishment Clause. Were you prejudiced by it? I thought the interveners pled it, although they probably didn't have standing to much earlier in the case. But are you prejudiced in some unfair way by having it raised at a late point? I certainly think so. I believe Chad is prejudiced primarily because prejudice is inherent where dispositive briefs have been filed and decided. Because he, of course, incurred the cost and expense and time of litigation all the way through that phase. But most importantly, if he can't achieve nominal damages, as we all know declaratory and injunctive relief is difficult in this setting because he has graduated from high school and is now in college. So this case could be rendered moot if he can't achieve nominal damages. Well, if they had pled qualified immunity and it had been granted, you certainly would have appealed that, correct? Yes. You would have appealed. So on the time frame that a student has, you would have gone through all of the same kind of briefing and time. So I'm not sure what it has to do with his graduating and rendering it moot. We may have, Your Honor. Although we may have, to be honest, gone a different direction had they pled qualified immunity because, of course, the school district has Eleventh Amendment immunity. That would have been a decision that was made very early on in the case as to the likelihood of even getting appellate review. But here we got Chad was able to receive a successful ruling on a motion for summary judgment, finding that he violated the Establishment Clause and essentially is going to be frustrated from receiving appellate review of that decision if this case is rendered not to have a liability. Why do you want appellate review? Right now you have bragging rights on the Pelosi statement and you're being deprived of what you say are nominal damages, usually a dollar. In terms of promoting good public policy, perhaps you've achieved the victory that you would lose on appeal. Or lose at a trial, to sound like a trial judge again. Perhaps. I'm not sure why you're saying his nominal damages would be mooted. What moots his entitlement to? If qualified immunity was permitted to be pled, if it's not waived and the answer is given legally to men and he's entitled to qualified immunity, we can't achieve nominal damages. They've raised it. Okay. You made your point. Go ahead. Of course, we do not believe that Dr. Corbett is entitled to qualified immunity. In fact, our theory of the Establishment Clause portion of this case is that Dr. Corbett established an environment of hostility within the classroom given all the statements that he made, that as this Court stated in Brown v. Woodland Unified School District, you take the entirety of the comments that he made and everything that occurred, the totality of the circumstances, and determine whether he conveyed a message of disapproval. Did your client or his parents ever approach Teacher Corbett about the way he was conducting his class? No, Your Honor, they didn't. They didn't? And the reason they did not is because a friend... Is that in the record the reason they did not? Yes, it is. Okay. Go ahead. The reason they did not is because a friend of his had already gone to Dr. Corbett and Dr. Corbett had actually made comments in the classroom about being fair and balanced, you can see them in the transcripts, and having met with a parent, and that was... Chad was very uncomfortable going back to Dr. Corbett and they determined that it was best just to pull him out of the class because the comments had been made to Dr. Corbett, even during that semester, about the way that he was teaching the course. Now, I don't know that those parents stated the exact same thing that... or the exact same reasons for that frustration with his teaching as Chad's parents would have, but... Did you go to the administration? We did talk to the administration. And make complaints? Yes, we did make a complaint. It was after the lawsuit was filed. I see. So Chad went to this class, he got the letter, his parents got the letter that Dr. Corbett sent out about the nature of the class? Certainly, and to be honest... And so he went through the class and he felt uncomfortable, but you're saying that that level of discomfort did not prompt him or his parents to go either to the teacher or to the administration to make a complaint? No, it didn't, because of the knowledge that they had of Dr. Corbett's responses to complaints about these types of things in the past. They felt that it was not going to achieve anything, first of all. And also, Chad was a 15-year-old kid. He was a sophomore in high school and he was uncomfortable and didn't want to be in the class anymore as a result of the comments that were made. But as you know, this isn't a subjective test. It isn't about Chad's religious beliefs. It's not even about how Chad felt in that classroom or whether he was offended, although he certainly was. This is looking at whether Dr. Corbett conveyed a message of disapproval within the classroom from the perspective of an informed, reasonable observer taking into account that they're 15- to 16-year-old kids and a captive audience within a public high school classroom. I'm sorry, go ahead. No, please. I think before you got the question, you were about to say why Dr. Corbett is not entitled to qualified immunity. And I'd like to know, one, if there's any case in which a teacher has ever been found to have violated the Establishment Clause for making comments like these. And I recognize you don't need one right on point. So the second part of the question is, what in the law, you know, would make it clear to a reasonable teacher that what he was doing was impermissible under the First Amendment? What case or what case, even if it's not right on point? But is there one on point? And if not, what's the analogous situation that gave the required clear notice? Of course, Your Honor. As to the first issue, no, that I'm aware of, there is not a case on point that directly deals with the identical set of facts. As to the second issue, I think the most important thing to note there is that by our theory of the case, Dr. Corbett established an environment of hostility and made many statements disparaging of religion that conveyed his message of disapproval. And in what case, what year did he make these comments? He made them in 2008, 2007 or 2008. I think it's fall of 2007. Okay. So what case before 2007 put him on clear notice that what he did was impermissible under the First Amendment? I think it's a series of cases regarding neutrality and the application of neutrality within the public high school context. Which ones, for example? I would say Vasquez and Vernon deal with hostility not in the public high school classroom, but they don't need to. They certainly deal with government and hostility towards religion. There are Nury v. Whitehead in the Ninth Circuit is a case where, dealing with the public high school context, there's also cases from other circuits, of course. Which, in other words, I mean there are Robbins v. Madigan, a teacher was told that it may be an Establishment Clause violation to have a Bible and be silently reading it. But I really think to best answer Your Honor's question, what I really need to tell you is that Dr. Corbett stated that he did not plead the defense of qualified immunity because he acknowledged that the law was clearly established if there was a hostile environment or many different statements that violated the law instead of just the Peloza statement. So he acknowledged that it was clearly established if our theory of the case that we pled in the First Amendment complaint and have kept, and I'm arguing before you today here, that the law was clearly established, that he had fair warning. Where did he admit that? He's admitted it in the District Court pleadings, and they've talked about it, I believe, in the Ninth Circuit pleadings as well. They admit it in the context of explaining why they did not assert the affirmative defense of qualified immunity earlier in the litigation. They say that they didn't plead it in the answer because our allegations was, I think in their words, an incessant barrage of comments. Regardless of how you say it, we do assert that there were many comments that Dr. Corbett made and an environment of hostility within the classroom that created the Establishment Clause violation. And they stated that because that law was clearly established, they did not think they had the right to plead qualified immunity. And it wasn't until the District Court judge came up with, in their minds, a very novel ruling, that one statement, the Pelosi statement that you referenced earlier was enough, that qualified immunity became a defense. So they were 90% right but 10% wrong. Yes. As to the Establishment Clause violation, there were many comments that Dr. Corbett made, and I think that this case is distinct from other cases because in Epperson v. Arkansas, the United States Supreme Court said that religion and the Bible can be taught from a historic and literary perspective from an objective standpoint and not run afoul of the Establishment Clause. Dr. Corbett could have done that here. He could have taught this class objectively. Some of the comments involve curriculum. We admit it. We didn't try to take them out of context. I don't think there is any context that they're appropriate. And the reason why is because the only theme running between all the comments is his disapproval of religion. And he made them in such a manner that he chose not to teach objectively, and the Supreme Court has made clear that that's what's required in public high school classrooms. We also feel that it's important, and the district court went through great pains in its opinion. When you say teach the class objectively, could you give an example of one of his statements or one of the subjects that he was talking about and how that could have been presented objectively as opposed to the way he chose to do it in his rather confrontational and sometimes didactic manner? Of course, Your Honor. Maybe the best one of that is he was discussing the scientific revolution, and there are many comments that come that we've pulled out of that lecture because in discussing the scientific revolution, he said things like, Aristotle was a physicist. He said, no movement without movers. And he argued that, you know, there sort of has to be a God. Of course, that's nonsense. He also said, I mean, all I'm saying is that, you know, the people who want to make the argument that God did it, there is as much evidence that God did it as there is that there is a gigantic spaghetti monster living behind the moon who did it. Another quote from the same lecture. We do not invoke a supernatural every time we get stymied. It's okay for religious people to, you know, or a magician. There may be a distinction, but there is no difference. What was it that Mark Twain said? Religion was invented when the first con man met the first fool. Comments like that clearly from an informed, reasonable observer convey a message of disapproval, and they're not necessary. I was just going to say, it seems to me that may very well have entitled you to a jury trial, but not to summary judgment yourself on that issue. Go ahead. And we would have been happy with a jury trial, certainly. We feel that 12 jurors who heard that from an objective, informed, reasonable observer perspective would have found that he conveyed a message of disapproval. And the district court went through pains to take every single comment and try to explain away what Dr. Corbett meant from a purpose perspective. Of course, the second prong of the Lemon Test doesn't consider what Dr. Corbett's purpose was, which he states was to get them to think critically. And maybe that was his purpose. But the second prong only looks at the effect of his comments. It is completely irrelevant. No, it's not just the effect. It has to be the principal or primary effect. Absolutely. And that's what distinguishes this case from cases such as American Family Association, where the court correctly stated that there was a purpose that was expressed and that the criticism or disapproval of Christianity or the religious rite that was seen there was ancillary or secondary. The only common theme through all of Dr. Corbett's comments is his disapproval of religion, which has to make it the primary effect because he's got a different and he's dealing with different subjects, but he always managed to get in his disapproval of religion. Okay. You wanted to save some time. You're down to three minutes. Yes, Your Honors. Thank you very much. Good morning. My name is Erwin Chemerinsky, and I represent Dr. James Corbett, and I'm arguing for the appellees. Underlying this case are very difficult questions about the meaning of the Establishment Clause that have never been dealt with by this court, the Supreme Court, or any court. This case, though, can be easily resolved and should be resolved based on qualified immunity. At this stage, there's only one defendant left on appeal, and that's Dr. Corbett. All of the other defendants have been dismissed. There are two claims for relief against Dr. Corbett. One is a claim for a declaratory judgment. However, that claim is clearly moot. Chad Farnan has graduated from high school. As this court said in Cole v. Oroville Union School District, in fact, Judge Fischer, in your opinion, when a student has graduated from high school, a claim for declaratory relief is therefore moot. So all that remains, then, is the claim for money damages against Dr. Corbett in his individual capacity. This, of course, is where qualified immunity arises. The Supreme Court in Pearson v. Callahan was clear that a court can dismiss, based on qualified immunity, does not clearly establish law that the reason law should know without needing to decide the constitutional question. But counsel says that it's effectively been waived or he should be stopped. What's the response on that? No, Your Honor. There's two questions with regard to qualified immunity. The first is, did the district court abuse its discretion by allowing Dr. Corbett to raise qualified immunity? This court, the Supreme Court, have never said that the failure to raise qualified immunity in answer is a waiver. In fact, I direct this court to its own decision in Camarillo v. McCarthy, where this court allowed qualified immunity raised for the first time at the summary judgment stage. In fact, in Graves v. Coeur d'Alene, this court essentially raised qualified immunity sua sponte, even though it hadn't been ruled on by the lower court. There is simply no case that has ever said that qualified immunity is waived if it's not raised in the answer. In fact, Your Honor, that approach would be inconsistent with Rule 15a of the Federal Rules of Civil Procedure. Rule 15a provides for liberal amendment of pleadings. There is no time limit after which waiver is such that there cannot be amendment of pleadings. Well, except in certain circumstances, such as undue delay or unfair prejudice. Why was there not undue delay or unfair prejudice? Well, there was not undue delay here, Your Honor, because Dr. Corbett raised qualified immunity immediately after the district court had found summary judgment against him on the statement. How many months and years was that after the case was brought? Your Honor, that then goes to the question of really was there any prejudice to raising it at that stage. It is important to note here that the interveners raised qualified immunity. When they filed their answer on April 28th, 2008, and that, therefore, means that the plaintiffs had notice. But the key question under decisions in the Supreme Court, like Krupski v. Kruster-Ciceri, or decisions of this court is, is there any prejudice to having allowed the amendment? Well, there arguably could have been. I think it's what counsel was saying. You know, maybe there was a tactical decision made here. Dr. Corbett says, you know, bring them on. And they spend a lot of time and money litigating the case. And then once he loses on one issue and is facing the prospect of having to pay for it, he's not feeling as enthusiastic about having engaged in this competition. Why isn't that a form of unfair prejudice? I don't think so, Your Honor. As the district court carefully explained on page 1197 of its opinion, it would not have changed the discovery done by the plaintiffs in any way. It would have not changed the briefing and argument in any way. In fact, Your Honor, the purpose of qualified immunity, and this is usually what the defendant wants, is to end all litigation without a decision on the merits. You could have gone in right afterwards and said, this can be easily resolved on qualified immunity. There's no case on point. There's no case that's close. Qualified immunity, no discovery, no nothing. Well, yes, you're right. There is no case on point. There is no case even close, which is why qualified immunity is appropriate. However, the district court made clear, and again it's on page 1197, that it would not have dismissed based on qualified immunity prior to reaching the merits. In fact, Your Honor, at the time this was litigated in the district court, it was before Pearson v. Callahan. And at that time under Saussure v. Katz, the district court had to decide the constitutional issue before getting to qualified immunity. So there was no prejudice. In fact, when this monk was just up here a moment ago, when she was asked what the prejudice is, the only prejudice that she identified was that they therefore lost against Dr. Corbett and therefore couldn't recover from her turn-of-the-season. That's not the measure of prejudice. The question of prejudice is, were they adversely affected in any way in litigating the case by Dr. Corbett not raising qualified immunity? What about the allegation? I don't want to be pejorative about it, but the statement by counsel that in the briefing below, there was essentially Dr. Corbett conceded, clearly established, and that was in fact the reason he didn't plead qualified immunity. There's not that concession in the briefing. In fact, she stood up here and said that there was that concession in the briefing in the Ninth Circuit. I wrote those briefs. We never said that, Your Honor. Okay. There's not such a concession. We don't concede that, Your Honor. Maybe she'll have a cite for us when she comes back. Mr. Chairman, Mr. Chemerinsky, getting back to the seems to be your main point, is that this case should be disposed of on appeal on qualified immunity. Now, which branch of qualified immunity do you think we should address as the dispositive factor? Well, Your Honor, this goes to the second question. Is there clearly established law that the reasonable office should know? And I would say there is no clearly established law as to when a teacher in statements in the classroom violates the Establishment Clause. Your Honor, there is no case in the history of this country where any other teacher had ever been liable or even sued for statements of this sort. Judge Wolf, you're right, of course. There doesn't have to be a case on all fours. However, if you look at the Supreme Court's decisions in cases like Brousseau v. Hogan or Wilson v. Lane. Or Hope. Well, in Hope v. Pelzer, they said there doesn't have to be a case on point, but there has to be fair notice that's given. But subsequent to Hope v. Pelzer. I was actually trying to agree with you. Okay. You're just not used to it. In the Ninth Circuit he is. But the point is, in fact, there's an interesting statement made by counsel for the plaintiffs after Judge Selma issued summary judgment on the one statement. It's found in the Supplemental Exhibit Record at page 117 where the counsel for the plaintiffs said that this case is, quote, the first of a kind. And it is, quote, I'm using plaintiff's counsel's words, constitutionally unique. That is what qualified immunity is about. And there's a particular reason in this case why qualified immunity is so important. As you know, qualified immunity exists at the exercise discretion by the government official. Here what we're talking about is the exercise discretion by a teacher in his or her classroom. And here to create liability without any prior decision on point really would have a chilling effect. Well, if the by chilling effect, it sounds like it's a different part of the Constitution. I had one question. In some of the briefing there were arguments that with regard to the first prong of the test, the purpose, there are many cases that say that great deference should be given to the stated purpose of the actor. As far as I could see, all of those involve either legislation or official policies of municipalities. Are there any cases that suggest that comparable deference should be given to Dr. Corbett? Well, yes, John. I would think that the deference is all about government officials. But as you approach the Establishment Clause issue, moving away from qualified immunity, I think there's a couple of things to keep in mind. I was asking you about particular cases. American Family is a board of supervisors and others involve legislative acts. And I understand considerations of comity in some instances, federalism, you know, government counsel against federal courts questioning the stated motives of a legislative body or a board of supervisors. But are there any cases that address whether similar deference should be given to the stated purpose of a single individual? No, Your Honor, because there aren't such cases. I mean, you're getting back to this being a unique situation. There isn't another case where a teacher has ever been sued for violating the Establishment Clause for statements made in class. Can you address Justice Brennan's eloquent defense of the rights of high school students in Edwards v. Aguilard, where he observes in discussing the Lemon Test that states and local school boards are generally afforded considerable discretion in operating public schools. At the same time, we have necessarily recognized that the discretion of the states and local school boards on matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment. The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools. I'm editing here. The classroom will not purposefully be used to advance religious views or hostile views. That may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary. No activity of the state is more vital to keep out divisive forces than in its schools, and so on. Absolutely. With that as a general principle, how do you relate that to the qualified immunity clearly established? As to qualified immunity, the Supreme Court said in Anderson v. Creighton, and this Court has often said, there have to be cases, or at least for notice, at a very specific level of abstraction. That's quite general. There's no case that has ever suggested that a teacher could be sued in class for statements made that are perceived as hostile to religion. And there's all sorts of difficult questions. How many statements? Over what time period? What age of students and the like? And so even though you have that general language, under Anderson v. Creighton, that's not specific enough to overcome qualified immunity. And as we move from that language and the qualified immunity issue to the Establishment Clause, I think there's two key points to keep in mind. One is statements critical of religion are not necessarily hostile to religion. It's impossible to imagine teaching a European history class where there aren't going to be statements made that are disapproving of religion. What about the example counsel gave? Which example? That's my question about Newton and the like, that passage on the scientific revolution. Well, the quote that she read said that Aristotle said that there has to be a god, and the response by Dr. Corbett is, that doesn't necessarily have to be a god. That's not what he said. He said it's nonsense. Well, not in that quote. The nonsense quote comes especially with regard to the Pelosi statement, where Dr. Corbett was asked to explain why he'd opposed Pelosi writing the statement in the newspaper. I understand it there, but I don't have these memorized by long shot. Actually, I've got a few of them written down, if I may. No, seriously, because, again, I'm taking a trial judge's perspective on this. Yes, Your Honor. Do you agree that it's sometimes proper to deny cross motions for summary judgment and require a trial because it's necessary to look at each motion in the light most favorable to the nonmoving party? Of course, that's right. Okay, so it's possible here that summary judgment wasn't properly granted or was improperly granted to both sides. But some of the statements that stuck out to me were statements that religious people are not different than magicians, that there is as much evidence for divine creation as there is for creation by a spaghetti monster, apparently a reference to a website that satirizes religion. In the quoting Mark Twain, religion was invented by a con man. So whether that is sort of permissible criticism or hostility seems to me, putting aside qualified immunity, a quintessential jury question. You'd have perhaps 12 jurors. They would be the ones to know how an objective, reasonable purpose person would take the effect and also make some inferences with regard to motive. Why not? I don't think this was a jury question at all, Your Honor. I think courts need to be extremely reluctant to create liability for teachers what they say in their classroom. Academic freedom and the First Amendment in that way are very much implicated. There has to be great deference to teachers for the comments they make. Teachers say provocative things to get students to think. Dr. Corbett said to the students before the semester even began that that's what he was trying to do. Okay, let's come back to what I was focusing on. Aristotle was a physicist. He said no movement without movers, and he argued that there sort of has to be a God. Of course that's nonsense. Right. Of course there has to be a God. I paraphrased it, and so I'm understanding, trying to understand why if that's how you had to paraphrase it, what does that say with respect to either summary judgment or with respect to qualified immunity? With regard to qualified immunity, it's the argument that I made before that he could not know that he would face personal liability for a statement like that, and therefore qualified immunity protects him. But if we're going to parse the language, what he said is it's nonsense to say that there has to be a God. Well, of course what that's saying is there are various viewpoints. Some believe in God and some don't. But to say that it's nonsense that there has to be a God isn't expressing hostility to religion. Likewise, the spaghetti monster line that Judge Wolf read, what he's saying is there are alternative theories. One theory is a religious theory, but there's also another theory that's out there. Well, that's not the way he expressed it, and, of course, people are more careful in litigation. I may, as a judge, agree that a certain wide scope ought to be given to teachers, but they're not ‑‑ I doubt you're arguing that that's unlimited. And I think we can all imagine statements that would be properly regarded as hostile and potentially very influential with young people. So chilling effect is perhaps a pejorative way of expressing that there should be at least some self-restraint, especially when, in a case like this, teacher's not teaching an approved curriculum. Didn't he essentially invent it? First of all, Your Honor, if you look, and this is in the briefs, the AP curriculum does require teaching things relating to religion, and any good teacher will relate historical matters to contemporary issues. And it's the nature of ‑‑ Is it your position that no ‑‑ putting aside qualified immunity, no teacher could ever violate the Establishment Clause of the First Amendment by expressing hostility to a religion? No, Your Honor, I'm not taking that position. I am taking the position that the statements here did not express hostility to religion, that creating liability here for the teacher would be very dangerous. And what I was going to say a moment ago, Your Honor, it's the nature of teaching that you don't read a script. You're saying things spontaneously to be provocative to your students. And put in that context statements that are praising of religion, like praising the church for doing things to help people, don't violate religion any more than provocative things criticizing. But I think that your question also explains why qualified immunity is so important here. Because what you're saying is, would it ever be the case? I'm not saying never. But where that line is drawn certainly is not established in any case law, and that's why qualified immunity is appropriate in these circumstances. I guess to make the point that I just want to be fair, because I did read that statement, because I wanted to make sure about the accuracy of the quote about nonsense. But he does go on and say, I mean, that's what you call deductive reasoning, you know. And he goes on to talk about inductive reasoning. So I don't want to give the impression to either side that I'm isolating statements out of context. No, of course not, Your Honor. But I do think that one of the problems with this case is that there are statements taken out of context. And where the American Family Association case becomes so important is to need to look at the statements in the context in which they're said. There's nothing wrong with quoting Mark Twain in that particular quote. Mark Twain did say that. The key is he's challenging students to think by quoting Mark Twain. That's why the district court, quite appropriately, went statement by statement. And only one statement was found to violate the Establishment Clause. And there the district court, I think, erred, because the district court didn't look at the statement in context. The context... I'm arguing two things this morning. First, that Dr. Korobit is protected by qualified immunity. And that, second, on the merits, there was no violation of the Establishment Clause here. I don't think in this case it's a close question.     I don't think it's a close question. I think Dr. Korobit clearly did not violate the Establishment Clause. But what I was saying to Judge Wolf in response to his question is when a teacher's statements in class violate the Establishment Clause is a very difficult question. Where that line is to be drawn, and to me that makes the qualified immunity aspect of this case all the more important. Because Dr. Korobit couldn't have known which statements, how many, under what circumstances would cause him to be personally liable. And that's why I think qualified immunity is the easiest way and the appropriate way for this Court to decide the case. Okay. Thank you very much. Your Honors, I wanted to start out by addressing Camarillo v. McCarthy and Gray to distinguish them from this case. Those are the qualified immunity cases that counsel believes show that clearly this was not waived here. In Camarillo, the Court said because it was addressed at summary judgment and there was no prejudice, they were going to make an exception to the general rule that waiver exists. Here, it was not addressed prior to the summary judgment. In fact, we received a final ruling. And in addition, prejudice resulted. In Graves, the Ninth Circuit considered qualified immunity. However, in Graves, the Ninth Circuit noted in a footnote specifically that qualified immunity was pled in the answer. And as a result, the District Court has laid the foundation for it to consider qualified immunity because it was raised in the answer. Here, it wasn't. And the interveners do not have standing to raise something that's available to defendant officials. What about counsel's point, though, that at the time this was presented, Pearson was not the law. Indeed, the District Court had the obligation to address the merits of the case. So coming back to the question of prejudice, what difference would have it made in terms of any litigation activity? Still had to prove and litigate the merits question. Yes, that may have been true, although, of course, some qualified immunity decisions can be made in the motion to dismiss phase. And given the fact that we knew of Dr. Corman's comments early on in the litigation, I'm not convinced that qualified immunity couldn't have been addressed earlier on. And that's really what Pearson says. Pearson doesn't say throw Saussure versus Katz in the standard that applies. Pearson didn't exist at the time. Saussure did. Right. And Saussure applies a very strict rule. Pearson says still follow Saussure if you can. And to be honest, I still think this Court should follow Saussure because the rights have been. That's drifting away from the merit. The question of prejudice, that's all I asked about. And the prejudice would still exist in relation to the frustration of appellate review and the fact that the District Court opinion could be vacated here if he's not able to get nominal charges. And the question, the more precise question, I think, is why did the district judge abuse his discretion? Not did you have some arguments, but why did the district judge abuse his discretion in your view? Your Honor, we would assert because of the level of the prejudice and the undue delay and the frustration of appellate review and the fact that the decision may be vacated as a result of our inability to seek appellate review. But at least one case has been cited where the Ninth Circuit found qualified immunity when it wasn't presented or decided at all on the trial level. So why is it an abuse of discretion for the district judge to decide after summary judgment to allow qualified immunity? I understand, Your Honor. In that case, that's Graves. And they had pled qualified immunity in the answer. And that's where it is so distinguishable from this case here because Dr. Corbett did not plead. If I may, Your Honor, I just wanted to provide you the information, the quotes or the citations regarding qualified immunity and what they admitted. This is the District Court's ruling, and it's citing to the motion. Give me the page size. Sure, page 5 of the District Court ruling. And then also page 57 of the opening brief in the Ninth Circuit, Your Honors. Okay. And that's where they did what, please? That is where they stated that our theory of the case was that there were many statements, and they did not realize that qualified immunity was an applicable defense essentially. I'm paraphrasing because you get yourself in trouble. Don't paraphrase. Okay. You don't appreciate. I'm being quite serious. Do not paraphrase something unless you're absolutely sure. Just as counsel paraphrased the Harris problem. I understand, Your Honor. We don't want to do that. I actually have the quote for you right here. That's okay. You've given it to us. It's page 57 of the opening brief and page 5 of Dr. Corbett. Excuse me, Your Honor, not the interveners. And also page 5 of the District Court opinion, which cites back to their briefing in the District Court level. Okay. Thank you. Counsel, we appreciate the argument. We don't mean to rush, but we have to make decisions in these cases. We're not rushing. We're just ready to get to the meat of the case. Thank you very much. We will stand in adjournment. Thank you, Your Honor. Thank you.
judges: Wolf, Tashima, Fisher